**Terry STILES, Appellant,**

v.

**ROYAL INSURANCE COMPANY OF AMERICA, Appellee.**

No. 05–89–01409–CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 1990.

Rehearing Denied Nov. 13, 1990.

Dena M. Kashiwamura, Dallas, for appellant.

Sharis L. Jinks, Dallas, for appellee.

Before ENOCH, C.J., and BILL J. STEPHENS[1] and EARL W. SMITH[2], JJ. (Retired Sitting by Assignment).

## OPINION

BILL J. STEPHENS, Retired Justice.

Terry Stiles, appellant, appeals from an adverse judgment rendered by the trial court after a jury trial in which the jury failed to find that Stiles had received an injury on or about August 6, 1987, as a result of a strain or overexertion in the course of his employment. Stiles brings four points of error. The first two points of error complain that the trial court erred in overruling his motion for new trial because the jury's verdict was contrary to the legally conclusive evidence, or in the alternative, the jury's verdict was against the great weight and preponderance of the evidence. Point of error number three contends that the trial court erred in excluding the testimony of Dr. Belvin Simmons, and point of error number four argues that the trial court erred in denying both his motion and his amended motion for continuance. We affirm the trial court's judgment.

## FACTS

Terry Stiles worked for Hallman & Hasse Enterprises as a manager/assistant manager for Jim's Pizza Parlors. According to Stiles, on Thursday August 6, 1987, he went to work between 10:30 and 11:00 a.m. He took the chairs down from the tables, counted the money and put it in the cash register, and began his preparation work in the kitchen. First he cut and ground three cases of cheese, weighing about 40 to 52 pounds each. He finished this work about 1:00 p.m. and then until 2:30 p.m. he was lifting, bending, and stooping. Part of his job was to shuffle or rotate the dough which entails taking a long tray of dough out of a rack with one hand and placing it on another rack, while simultaneously taking another tray out and moving it. The temperature in the kitchen where this type of work was performed was 105 to 110 degrees. While Stiles was shuffling the dough, he began having intense chest pains. He stopped working, sat down at a table and laid his head on his

---

1. The Honorable Bill J. Stephens, Justice, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

2. The Honorable Earl W. Smith, Justice, Retired, Court of Appeals, Third District of Texas at Austin, sitting by assignment.

arm to rest, where he remained for 15 to 20 minutes. He was profusely sweating, to the extent that his shirt and pants were saturated and dripping on the floor. He believed that he was having a heart attack. The delivery man came in the dining room and asked Stiles if he needed an ambulance. The pain continued and spread to his left armpit. His relief came to work early and Stiles went home where he spent the rest of the evening watching television. He was unable to sleep because of the discomfort in his left arm. On Friday, Stiles was due at work late in the afternoon and he tried to sleep in the morning but was unable to do so.

By the time he got off work Friday night, his left hand and arm were so bad that he had to use his right hand to place his left hand in his pocket. He still could not sleep Friday night. At 5:00 a.m. Saturday morning, Stiles accompanied his wife to the store where she worked. On arriving, Stiles made coffee, drank two sips, and felt like someone had hit him in the chest with a sledge hammer. He does not remember driving home from his wife's work place; he just remembers lying on the water bed at home. The next thing Stiles remembers is seeing the nurse's station at the hospital.

## POINTS OF ERROR NUMBERS ONE AND TWO

█ Stiles' first point of error contends that the trial court erred in overruling his motion for new trial because the jury's verdict was contrary to the legally conclusive evidence, and the second point of error contends that the verdict was against the great weight and preponderance of the evidence. Under Texas law, when legal and factual insufficiency points are raised, the courts should rule on the legal insufficiency point first. *Glover v. Texas Gen. Indem. Co.*, 619 S.W.2d 400, 401 (Tex.1981); *Tom Benson Chevrolet, Inc. v. Alvarado*, 636 S.W.2d 815, 819 (Tex. App.—San Antonio 1982, writ ref'd n.r.e.). This Court, in deciding a challenge to the legal sufficiency of the evidence, must consider only the evidence and inferences tending to support the finding and disregard all evidence and inferences to the contrary. *Stedman v. Georgetown Sav. and Loan Ass'n*, 595 S.W.2d 486, 488 (Tex.1979). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987). Stiles argues in his first point of error that the jury's verdict is contrary to the legally conclusive evidence that his heart attack was work related. When the complaining party bears the burden of proof on an issue and this issue is answered adversely, the point of error is styled as a "matter of law" point, because the fact finder's failure to find a fact need not be supported by the evidence. Cornelius, *Appellate Review of Sufficiency of the Evidence Challenges in Civil and Criminal Cases*, 46 TEX.B.J. 439, 440 (1983). The initial review of a "matter of law" point is the same as that required by a "no evidence" point. However, in addition to finding no probative evidence to support the jury finding, the court must also find that the contrary to the finding is established as a matter of law. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

█ In his second point of error Stiles argues that the jury's verdict is against the great weight and preponderance of the evidence. In reviewing a complaint that the jury's verdict is against the great weight and preponderance of the evidence, the court will consider all of the evidence in the record that is relevant to the fact being challenged. The court may set aside the verdict only if it is so contrary to the overwhelming weight of evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). We may not substitute our judgment for that of the trier of fact. *Clancy v. Zale Corp.*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Kirby v. Cruce*, 688 S.W.2d 161, 167 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Thus, although the evidence is conflicting, the jury's verdict will be left undisturbed. *Ellsworth v. Bishop Jewelry and Loan Co.*, 742 S.W.2d 533, 535 (Tex.App.—Dallas 1987, writ denied).

We note from the outset that at trial Stiles offered no medical testimony, only his testimony as to the causal connection of his heart attack. Our courts have recognized that in heart attack cases, a doctor's testimony that the attack was caused by exertion should be presented to determine the issue of causation. *Aetna Cas. & Sur. Co. v. Scruggs*, 413 S.W.2d 416, 424 (Tex.Civ.App.—Corpus Christi 1967, no writ). Furthermore, medical testimony is ordinarily relied upon to determine the causal connection between the plaintiff's activities and the heart attack. *See Commercial Standard Ins. Co. v. Curry*, 460 S.W.2d 464, 467–68 (Tex.Civ.App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.).

The evidence reveals that Stiles had been engaged in the same job activities during his term of employment at the pizza parlor; that his family had a history of heart problems; that his father had died of a massive heart attack at age 46; that Stiles was 5 feet 8 inches tall, weighed 225 pounds, and smoked two packs of cigarettes a day; and that he had had no physical examination for the past ten years. Absent medical testimony, the jury was unconvinced that Stiles' work activity was the producing cause of his heart attack.

Stiles' first and second points of error are overruled.

## POINT OF ERROR NUMBER THREE

In his third point of error, Stiles contends that the trial court erred in excluding the testimony of Dr. Belvin A. Simmons. Although Dr. Simmons had examined Stiles prior to trial, he was not Stiles' treating physician. In answer to interrogatories propounded to Stiles before he was seen by Dr. Simmons, Stiles had not named Dr. Simmons as a treating physician. He had, at the time of the answer to the interrogatories, stated that he would call "any other physician who has or will examine or treat" him. After being treated by Dr. Simmons, Stiles failed to supplement his answers to the interrogatories and to name Dr. Simmons.

Stiles contends that he was unexpectedly called to trial in this case, that he was unable to subpoena his treating physician, Dr. Hadad, and that since defendant had been furnished with a copy of Dr. Simmons' examination of Stiles, no surprise existed; and therefore the testimony of Dr. Simmons should have been admitted. The trial court declined to admit Dr. Simmons' testimony.

Rule 215(5) of the Texas Rules of Civil Procedure provides:

Rule 215. Abuse of Discovery; Sanctions

**5. Failure to Respond to or Supplement Discovery.** A party who fails to respond to or supplement his response to a request for discovery shall not be entitled to present evidence which the party was under a duty to provide in a response or supplemental response or to offer the testimony of an expert witness or of any other person having knowledge of discoverable matter, unless the trial court finds that good cause sufficient to require admission exists. The burden of establishing good cause is upon the party offering the evidence and good cause must be shown in the record.

TEX.R.CIV.P. 215(5).

The sanction provided by rule 215(5) is automatic unless good cause is shown. *E.F. Hutton & Co. v. Youngblood*, 741 S.W.2d 363, 364 (Tex.1987); *Gutierrez v. Dallas Independent School Dist.*, 729 S.W.2d 691, 694 (Tex.1987); *Morrow v. H.E.B., Inc.*, 714 S.W.2d 297, 297–98 (Tex. 1986). The purpose of the rule is to insure compliance with the discovery rules, prevent needless delays, and, most notably, deter future violations by litigants. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). The result of the application of the sanction prescribed by rule 215(5) is the deprivation to the offending party of the use of concealed evidence which is valuable to him. He may thus be faced with a no evidence or insufficient evidence situation on a vital issue. Additionally, in *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796, 809 (Tex.App.—Dallas 1987, no writ), this Court held that the exclusion of evi-

dence which has not been produced in discovery is a proper sanction within the discretion of the court.

*Sharp v. Broadway National Bank,* 784 S.W.2d 669 (Tex.1990), is the latest pronouncement by the Texas Supreme Court. In *Sharp,* the court laid down the current rules governing the requirements of answers to interrogatories inquiring as to expert witnesses. A little more than a year before trial Sharp served interrogatories upon the Bank. The Bank responded "nondesignated at this time." The Bank never supplemented this answer. Twenty-six days before trial, counsel for Sharp received the Bank's notice of deposition of an attorney whom the Bank intended to call as an expert on attorney fees. The depositions were conducted within a week of trial, and counsel for Sharp attended and questioned the witness. At trial Sharp objected to the admission of expert testimony from any of the witnesses on the grounds that none of them had been identified in answers to interrogatories. Counsel for the Bank contended that the witnesses should nevertheless be permitted to testify because there was good cause for the Bank's failure to supplement its answers to Sharp's interrogatories. The trial court, after hearing lengthy arguments, allowed the testimony of the Bank's attorney and the attorney who had been deposed, and refused to hear testimony from the Bank's third witness. Judgment was rendered for a sum for attorney's fees and the matter was appealed to the court of appeals.

The court of appeals held that the testimony of the attorney who was deposed in the presence of Sharp's counsel was admissible because it came as no surprise to Sharp. The court of appeals reasoned:

> We find no unfairness or ambush in allowing the testimony of a witness who was deposed and cross-examined by both parties a week before trial simply because the opposing party only received a 26 instead of a 30 day notice.

*Sharp v. Broadway Nat'l Bank,* 761 S.W.2d 141, 146 (Tex.App.—San Antonio 1988). Finding the evidence of the one witness sufficient to support the trial court's award of attorney fees, the court of appeals affirmed the trial court's judgment. On appeal to the Texas Supreme Court, the court held:

> A party has an affirmative duty to identify expert witnesses in response to an appropriate inquiry. TEX.R.CIV.P. 166b.6.b. The responding party must supplement its list of experts "as soon as practical, but in no event less than thirty (30) days prior to the beginning of trial except on leave of court." *Id.* The sanction for failing to comply with this rule is the automatic exclusion of the unidentified witness' testimony. TEX.R.CIV.P. 215.5; *Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986). However, if the trial court finds that the party offering the testimony had good cause for failing to supplement, it may, in its discretion, admit the testimony. TEX.R. CIV.P. 215.5; *Boothe v. Hausler,* 766 S.W.2d 788, 789 (Tex.1989). The party offering the testimony has the burden of showing good cause for its failure to supplement. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 395 (Tex.1989); *Yeldell v. Holiday Hills Retirement and Nursing Center, Inc.,* 701 S.W.2d 243, 246 (Tex.1985).
>
> The trial court in this case made no specific finding of good cause. The court of appeals concluded from the totality of the record that good cause was shown because Sharp and Ludlum were not surprised. Counsel for the Bank attempted to show good cause by arguing that he had orally identified his attorney fee experts more than once in advance of trial, that opposing counsel knew the only trial issue was attorney fees, that opposing counsel waived any objection by appearing at the deposition a week before trial, that he was never reminded to supplement his answers, and that his failure to do so was inadvertent. Assuming that all these explanations are true, they are insufficient to establish good cause for the admission of the testimony of a witness not properly identified in discovery.
>
> The absence of surprise, unfairness, or ambush does not alone satisfy the good

cause exception to the sanction of automatic exclusion. *Morrow,* 714 S.W.2d at 298. Identification of witnesses in response to discovery must be in writing; oral notice is not proper. *See* TEX.R. CIV.P. 168.5. This avoids the inevitable disputes over who said what when. The fact that a witness' identity is known to all parties is not itself good cause for failing to supplement discovery. A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not identified him or her in response to a proper interrogatory. Thus, even the fact that a witness has been fully deposed, and only his or her deposition testimony will be offered at trial, is not enough to show good cause for admitting the evidence when the witness was not identified in response to discovery. Objection to the offer of the deposition at trial is sufficient to preserve error. *See Clark* [*v. Trailways, Inc.*], 774 S.W.2d [644] at 647 [Tex.1989]. The fact that a witness will testify only about attorney fees does not excuse proper identification in discovery. *E.F. Hutton & Co. v. Youngblood,* 741 S.W.2d 363, 364 (Tex.1987). Further, a party has no duty to remind another party to abide by the Rules of Civil Procedure. Inadvertence of counsel is also not good cause. *Id.* In sum, the Bank's explanations, individually and altogether, do not show good cause for its failure to identify its expert witnesses in response to proper discovery requests.

*Sharp,* 784 S.W.2d at 671–72 (footnotes omitted).

■ The language of the Texas Supreme Court makes it abundantly clear to us that an expert witness must be properly identified in writing in response to a proper interrogatory. This should be done not merely by a letter to counsel, as was done in this case, but by proper answer to the interrogatory filed in the case. No timely answer to the interrogatories having been made, the trial court did not abuse its discretion in denying Stiles the right to present Dr. Simmons as a witness on his behalf. Point of error number three is overruled.

## POINT OF ERROR NUMBER FOUR

[9] In point of error number four, Stiles contends that the trial court erred in denying his motion for continuance and his amended motion for continuance. Stiles recognizes that whether a continuance should be granted or denied rests in the discretion of the trial judge and is to be determined in light of the facts before the trial judge. *Garcia v. Texas Employers' Ins. Ass'n,* 622 S.W.2d 626, 630 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.). Stiles argues that his motion for continuance should have been granted because a material witness, Dr. Hadad, his treating physician, was unavailable for trial. Stiles had previously named approximately eight physicians as potential expert witnesses, stating that they would testify about Stiles' medical condition and the cause, nature, extent and duration of incapacity. The motions for continuance fail to address why none of these witnesses could not have been called to provide the testimony needed. Furthermore, Stiles failed to take the deposition of Dr. Hadad prior to trial. This in and of itself would have preserved the testimony which Stiles wished to introduce. In *Lynd v. Wesley,* 705 S.W.2d 759 (Tex. App.—Houston [14th Dist.] 1986, no writ), the court of appeals held:

> The Texas Rules of Civil Procedure, Rule 176, authorizes the placing of a witness residing within 100 miles of the courthouse under subpoena to compel their attendance and Rule 186 authorizes the taking of depositions. If utilized, these rules offer parties ready and fairly certain means of procuring testimony of witnesses who reside within 100 miles. Additionally, these rules offer parties absolute protection against being forced to trial without the benefit of the testimony of material witnesses. If parties choose to forego their rights under these rules and resort to other and less effective and less certain means of procuring the testimony of material witnesses they must be held to their own risk and with fair knowledge that they will be put to trial without the benefit of the testimony.

*Lynd,* 705 S.W.2d at 764.

In *Fritsch v. J.M. English Truck Line, Inc.,* 151 Tex. 168, 246 S.W.2d 856, 859–60

(1952), the Texas Supreme Court found that a party's failure to subpoena a witness until the "eleventh hour" failed to show diligence on the part of the party seeking a continuance. The court stated that "where a party has omitted to employ the means provided by the law when practicable, the omission will in general be fatal to his application" for continuance. *Fritsch,* 246 S.W.2d at 859. Stiles' fourth point of error is overruled.

The judgment of the trial court is affirmed.